# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NATHANIEL HARRISON,

     Plaintiff,

     v.

CORECIVIC,

     Defendant.

Civil Action No. 16-1829 (CKK)

## MEMORANDUM OPINION
(September 14, 2022)

While incarcerated at the Central Treatment Facility ("CTF") in Washington, D.C., Plaintiff Nathaniel Harrison voluntarily ingested a pill prescribed to another inmate and developed a painful erection. Plaintiff claims that he repeatedly complained of severe pain to the on-duty correctional officer, who failed to timely or completely relay his condition to the appropriate medical personnel, which delayed his access to medical treatment. Plaintiff contends that this delay resulted in permanent impotence.

Pending before the Court is a [89] Motion for Summary Judgment filed by Defendant CoreCivic, which operated CTF at the time of the incident. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court concludes that no genuine disputes of material fact remain and so shall **GRANT** Defendant's Motion for Summary Judgment.

---

[1] The Court's consideration has focused on the following documents and their attachments and/or exhibits:

- Defendant CoreCivic's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 89;
- Plaintiff's Opposition to Defendant CoreCivic's Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 94; and
- Defendant CoreCivic's Reply in Support of Motion for Summary Judgment ("Def.'s Reply"), ECF No. 95.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

## I.   BACKGROUND

### A.  Factual Background

In presenting the facts pertinent to resolving the present motion, this Court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).   Although CoreCivic has filed a [89-1] Statement of Facts in Support of Motion for Summary Judgment ("Def.'s Stmt."), Plaintiff has not filed a responsive statement, in violation of Local Civil Rule 7(h)(1) (requiring an opposition to a motion for summary judgment to be "accompanied by  a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement").   The Court advised the parties that it "**strictly adheres to the dictates of Local Civil Rule 7(h),** which requires .  .  . [t]he party opposing the motion [for summary judgment] to submit a statement enumerating all material facts which the party contends are genuinely disputed and thus require trial."   Scheduling & Procedures Order at 1, ECF No. 88 (emphasis in original).   It further directed that the responding party's statement must "respond to each paragraph" of the moving party's statement "with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied[.]" *Id.* at 2.   And the Court warned that it "may assume that facts identified by the moving part in its statement of material facts are **admitted**, unless such facts are controverted" in the opposing party's responsive statement.   *Id.* (emphasis in original); *see also* LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").   Based on Plaintiff's failure to comply with

these directives, it would be appropriate for the Court to consider all of the facts contained in Defendant's Statement to be admitted.  However, the Court has carefully reviewed Plaintiff's responsive pleading and the entire record, and will note where Plaintiff offers facts contravening those presented by Defendant—to the extent that Plaintiff has cited an appropriate portion of the record in support of facts presented.

  1.  CTF Operations under CoreCivic

As of September 2013, Plaintiff was a detainee of the District of Columbia Department of Corrections ("DOC"), assigned to the Correctional Treatment Facility ("CTF").  Def.'s Stmt. ¶ 1. At the time, CTF was owned and operated by CoreCivic, pursuant to a correctional services agreement with the District of Columbia, which expired as of January 2017.  *Id.* ¶¶ 1, 10, 11. CoreCivic was "responsible for providing custody and security for all inmates housed at CTF." *Id.* ¶ 13.  CoreCivic did not provide healthcare to inmates at CTF.  *Id.* ¶¶ 5, 14.  Rather, Unity Health Care ("Unity") provided healthcare to CTF inmates pursuant to a separate contract with DOC. *Id.* ¶¶ 58, 61.  Unity was responsible for providing 24-hour emergency care to inmates.  *Id.* ¶ 87.  Upon intake at CTF, inmates were informed that CoreCivic did not "contract or manage healthcare."  *Id.* ¶ 64.  CoreCivic's employees did not have the authority to approve or disapprove an inmate's request to be seen by Unity's medical personnel; decisions about whether inmates would "be seen by and/or transported to medical" were "solely within the discretion of [Unity]." *Id.* ¶¶ 6, 71.

If a CTF inmate relayed a medical complaint directly to a correctional officer, the officer was required to call medical (operated by Unity) and relay the inmate's request to visit medical, including "all information obtained from the inmate."  *Id.* ¶ 80.  Unity would then determine whether the inmate needed immediate medical care or whether he would be required to complete

a Sick Call Request form. *Id.* ¶ 81. Unity would notify the correctional officer whether the inmate should be brought to medical immediately. *Id.* ¶ 82.

If an emergency medical situation occurred when an inmate was secured in his cell, the inmate would "knock on his cell door" or "flag down an officer" during rounds to obtain the correctional officer's attention. *Id.* ¶ 88. The same process would be followed: the correctional officer would call Unity to relay the information obtained from the inmate and would wait for direction from Unity as to whether the inmate would need to be transported to Unity or would be required to complete a Sick Call Request form. *Id.* ¶ 90. The correctional officer was required to "relay and provide to Unity nurse's station all necessary information" including the "location of the injured or ill inmate, type of illness, and whether the inmate was conscious" to "enable the nurse to determine whether the inmate's medical condition did in fact require immediate medical attention." *Id.* ¶ 91. Unity was responsible for determining whether the inmate's condition was actually emergent; CoreCivic did not have authority to make this decision. *Id.* ¶¶ 93, 94. If Unity determined that the reported condition was not an emergency, then the inmate would be scheduled for a medical care appointment or directed to complete a Sick Call Request form. *Id.* ¶ 97.

However, if Unity determined that the inmate required immediate medical attention, Unity would inform CoreCivic personnel whether the inmate should be brought to medical immediately and whether medical transport would be sent to the housing unit. *Id.* ¶¶ 96, 99. The nurse for Unity would initiate any response by the Medical Emergency Response Team ("MERT") to the housing unit and would notify CoreCivic's command center. *Id.* ¶¶ 99, 100. CoreCivic's command center would then contact the shift supervisor and request that the supervisor immediately report to the site of the emergency. *Id.* ¶¶ 99, 101.

In September 2013, Plaintiff was assigned to Housing Unit C4A of CTF, which was designated for witness protection inmates. *Id.* ¶¶ 29, 117.  C4A was a "two-tier" pod in which cells lined the perimeter of both tiers and opened to a "dayroom" in the middle of the pod. *Id.* ¶ 31. Generally, one correctional officer at a time was assigned to C4A. *Id.* ¶ 39.  The correctional officer's desk in C4A was located "on the bottom floor of the pod in the dayroom." *Id.* ¶ 40. Correctional officers at CTF worked in 12-hour shifts, switching at 6:00 a.m. and 6:00 p.m. *Id.* ¶ 51.  CoreCivic required a minimum of "two counts" to be completed during each shift, with a minimum of seven formal counts within a 24-hour period.  According to CoreCivic, its count times in 2013 included "standing identification counts" at 0100, 0300, 0630, 1000, as well as counts verifying the inmate with his badge at 1500, 1930, and 2300. *Id.* ¶ 53.

C4A inmates were permitted to freely enter and exit their cells to access the dayroom between 7:00 a.m. and 11:00 p.m. *Id.* ¶ 32.  There were secured in their cells between 11:00 p.m. and 7:00 a.m.—except for a 30-minute "chow time" between 5:00 and 5:30 a.m. *Id.* ¶¶ 33, 34.

   2. <u>September 2-3, 2013 Incident</u>

On September 2, 2013, Plaintiff spoke to another inmate, Inmate Morrison, during "pill call" at approximately 8:00 p.m.[2] *Id.* ¶ 121.  Plaintiff told Inmate Morrison that he was having difficulty sleeping and was dealing with depression. *Id.* ¶ 122.  Plaintiff did not seek any medical or mental health treatment for these conditions prior to this date. *Id.* ¶ 123.  Plaintiff knew that Inmate Morrison was prescribed medication for depression. *Id.* ¶ 124.  Plaintiff thought that Inmate Morrison's medication would help him sleep. *Id.* ¶ 125.  Inmate Morrison gave Plaintiff his prescription medication, later "suspected to be" Trazodone Hydrochloride ("Trazodone"). *Id.*

---

[2] "Pill call" occurred at C4A's medical triage unit each morning and evening—the evening session occurred between 8:00 p.m. and 10:00 p.m. *Id.* ¶ 36.  Unity was responsible for distributing prescribed medication. *Id.* ¶ 38.  Inmates who were prescribed medication were not permitted to keep the medication on their person. ¶ 37.

¶¶ 2, 127.  Trazadone is used to treat, *inter alia*, major depression and insomnia.  *Id.* ¶ 128.  Its contraindications include priapism.  *Id.* ¶ 129.  Its "adverse reactions" include "impotence (erectile dysfunction)" and "priapism."  *Id.* ¶ 130.

At approximately 11:00 p.m. on September 2, 2013, Plaintiff voluntarily ingested Inmate Morrison's prescription medication.  *Id.* ¶¶ 2, 131.  Plaintiff was secured in his cell at the time. *Id.* ¶ 132. Plaintiff did not tell his cellmate that he had ingested Inmate Morrison's prescription medication.  *Id.* ¶ 133.

Later that night, Plaintiff began to experience a painful erection.  The parties dispute the exact time at which his pain began.  Relying on medical records, CoreCivic indicates that Plaintiff began to experience a painful erection at approximately 3:00 a.m. on September 3, 2013."  *Id.* ¶¶ 3, 137, 171 172.  Plaintiff testified during his deposition that he did not know how long he was asleep before he woke up in pain, but he thinks a "couple hours" passed between the time he took the pill and the time he woke up in pain—in other words, he places the onset of his pain slightly earlier than CoreCivic.  *See* Harrison Dep. 84:8–22. 87:1–4, 88:9–12, 89:3–5, 9–21, 90:8–11.

Plaintiff attempted to alleviate the erection by urinating, but it did not go away.  Def.'s Stmt. ¶ 138.  He told his cellmate that he was experiencing pain in his "abdominal area," but not that he was experiencing a painful erection.  *Id.* ¶¶ 139–40; Harrison Dep. 85:1–13.

Plaintiff then began to knock on his cell door to get the on-duty correctional officer's attention.  Def.'s Stmt. ¶¶ 4, 141.  There is no evidence about the identity of the correctional officer on duty at the time.  *Id.* ¶¶ 142, 143.  Plaintiff could not recall any characteristics about the on-duty correctional officer, except that he was a black male.  *See* Harrison Dep. 96:12–97:4.  In addition, CoreCivic indicates that it no longer has possession, custody, or control of CTF logbooks

from 2013 because those materials were transferred to DOC when DOC resumed control of CTF in January 2017.[3]  *See* Def.'s Stmt. ¶¶ 54–57.

Plaintiff testified that he could see the correctional officer's desk from his cell window, and that he began to yell at the officer that he was in pain and needed to visit the medical unit.  *Id.* ¶¶ 144, 146.  Plaintiff himself testified that the officer did not know why Plaintiff was asking for medical care because Plaintiff "didn't want to yell it out on the tier like that."  Harrison Dep. 95:1– 10.  Thought not entirely clear from his testimony, it appears that—at most—Plaintiff yelled that he was "in pain" and wanted to go to the medical unit, but did not given the officer any facts about the source or location of his pain.  *Id.* 95:9–12.

Plaintiff again got the officer's attention and told him that he was in pain.  *Id.* 98:17–18.  According to Plaintiff, the officer responded that he would "call back down," referring to calling the medical unit.  *Id.* 98:19–99:2.  Plaintiff then testified that he told the officer (at some point, though it is unclear when) that he was experiencing pain of "13" on a "scale to ten."  *Id.* 99:3–7.  He further testified that the officer appeared to understand that Plaintiff was in pain because "he kept calling down there," and the officer informed him that he was "waiting on [his] transport," and could not do anything else.  *Id.* 99:8 –16.  According to CoreCivic, this meant that the officer was "waiting on a decision from Unity."  *Id.*  Plaintiff again did *not* disclose to the officer that he was experiencing a painful erection or that he had taken Inmate Morrison's pill; he told the officer only that he had pain in his abdomen.  *Id.* 100:1–10.

---

[3] Plaintiff did not name CoreCivic as a defendant in his Original Complaint.  *See* Compl., ECF No. 1.  He added CoreCivic as a defendant in his First Amended Complaint, filed on December 12, 2016.  *See* Am. Compl., ECF No. 5.  However, CoreCivic was not served with the First Amended Complaint until February 21, 2017.  *See*  Proof of Service, ECF No. 13.

Plaintiff testified that at some point, he saw the correctional officer pick up the phone at the desk. *Id.* 101:10–16. There is no testimony or other evidence on the record indicating what the correctional officer said or to whom he spoke.

Plaintiff also notified the correctional officer of his pain when the correctional officer made his rounds. Def.'s Stmt. ¶ 153. However, he again only informed the officer that he was experiencing pain in his "abdomen," but did not relay that he was experiencing a "painful erection" or a "medical emergency." *Id.* ¶¶ 154, 155.

At 5:00 a.m., Plaintiff exited his cell for chow time. *Id.* ¶ 157. He asked the correctional officer, "what happened?" and where was the medical transport. *Id.* ¶ 158; *see* Harrison Dep. 107:19–108:6. Plaintiff testified that the officer responded that he had "been trying all morning," and that Plaintiff's own reaction to this update was that the correctional officer could not do anything "but wait for transport." Harrison Dep. 107:19–108:6.

Plaintiff was secured in his cell again at 5:30 a.m. Def.'s Stmt. ¶ 161. When the correctional officer changed shifts, Plaintiff relayed to the incoming officer that he was in pain. *Id.* ¶ 163. However, there is no evidence that Plaintiff relayed to him that he had been experiencing a prolonged or painful erection; rather, he again stated only that he was having "abdominal pain, sharp abdominal pain." Harrison Dep. 114:17–115:7. The new officer indicated that he had been informed about Plaintiff's complaint. *Id.* ¶ 165.

Sometime between 8:00 and 10:00 a.m. on September 3, a medical transport escorted Plaintiff from his housing unit to the medical unit. *Id.* ¶¶ 8, 168. Plaintiff was first seen by a Unity medical provider at 2:29 p.m. *Id.* ¶ 170. Several hours later, at 7:49 p.m., a Unity medical provider noted that Plaintiff had been complaining of "having a painful erection since 3 am today." *Id.* ¶ 172. Plaintiff was diagnosed with priapism. *Id.* ¶¶ 8, 172. He was sent to Howard University

Hospital for additional treatment.  *Id.* ¶ 174.  During intake at Howard, Plaintiff stated that he had painful priapism that had not subsided for 19 hours, with an onset of 3:00 a.m.  *Id.* ¶ 177.  He admitted that he took what he thought was a sleeping pill from a fellow inmate.  *Id.* ¶ 178.  Howard staff determined that the medication Plaintiff had ingested was Trazodone.  *Id.* ¶ 180.  Plaintiff underwent two surgeries.  *Id.*  ¶ 176.

### B.  Procedural Background

Plaintiff filed his Original Complaint in this action on September 12, 2016 against Unity.  *See* Orig. Compl, ECF No. 1.  He subsequently amended his complaint, adding CoreCivic as a defendant.  *See* 1st Am. Compl., ECF No. 5.  His First Amended Complaint asserted claims of "negligence" and "medical negligence" against each defendant.  *Id.* ¶¶ 26–45.  Shortly thereafter, Unity filed a [7] Notice to Amend Caption to substitute the United States as a defendant under the Westfall Act, based on the government's certification that Unity was acting within the scope of its employment as an "employee" of the United States Public Health Service at the time of the incidents alleged in the complaint. *See* Notice, ECF No. 7; Gov.'s Certification, ECF No. 6.  With no opposition from Plaintiff, the Court granted this request and the United States was substituted as a defendant for Unity.  *See* Minute Order (Dec. 15, 2016).

After the Court granted the United States' [25] Motion for Judgment on the Pleadings and CoreCivic's [15] Motion to Dismiss and dismissed Plaintiff's First Amended Complaint without prejudice, *see* Order, ECF No. 31, Plaintiff again amended his complaint.  *See* 2d Am. Compl., ECF No. 33.  His Second Amended Complaint again asserted claims of negligence and medical negligence against each defendant.  *Id.* ¶¶ 27–48.  CoreCivic and the United States again moved to dismiss the Second Amended Complaint.  *See* CoreCivic's Mot. to Dismiss, ECF No. 28; Gov.'s Mot. to Dismiss, ECF No. 40.  Concluding that Plaintiff's claims against the United States were

barred by the FTCA's statute of limitations, the Court granted the United States' motion and dismissed it as a defendant in the case. *Harrison v. United States*, Civil Action No. 16-1829 (CKK), 2018 WL 4680204, at \*4–5 (D.D.C. Sept. 28, 2018). The Court also granted in part CoreCivic's motion to dismiss as to Plaintiff's "medical negligence" claim—finding that Plaintiff had failed to state a claim because "CoreCivic was under no duty to provide inmates, including Plaintiff with medical services." *Id.* at \*3. However, the Court denied CoreCivic's motion to dismiss as to Plaintiff's negligence claim. Plaintiff's only remaining claim is against CoreCivic for negligence.

Shortly after the Court held an initial scheduling conference on October 30, 2018, the parties requested that the case be referred to a magistrate judge for mediation while discovery was ongoing. *See* Joint Status Report, ECF No. 58. The Court granted the request. *See* Referral Order, ECF No. 59. Although the parties initially proposed October 30, 2019 as the deadline for the conclusion of all discovery, *see* Joint Status Report, ECF No. 58, they sought seven extensions to this deadline based on difficulties obtaining releases and authorizations for third-party documents relating to Plaintiff, as well as limitations in scheduling depositions and other health-related complications due to the COVID-19 pandemic. *See* ECF Nos. 63, 66, 68, 73, 76, 78, 81. The Court granted each extension—resulting in a delay of the completion of discovery until June 30, 2021. *See* Minute Order (Jan. 24, 2021). The parties' efforts to engage in mediation were similarly delayed; settlement conferences were held by Judge S. Martin Teel, Jr. on August 11, 2021 and September 7, 2021, but did not result in a settlement. *See* Minute Order (Aug. 18, 2021); Minute Order (Aug. 25, 2021); Order Concluding Mediation, ECF No. 86.

CoreCivic filed its pending [89] Motion for Summary Judgment on October 14, 2021. That motion is now ripe for the Court's review. *See* Pl.'s Opp'n; Def.'s Rely.

10

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.  *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009); *see also Sibert-Dean v. Wash. Metro. Transit Auth.*, 751 F. Supp. 2d 87, 90 (D.D.C. 2010) (requiring the non-moving party's factual representations in a sworn affidavit to be supported by facts in the record).  Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). The district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

### III.   DISCUSSION

**A. The Undisputed Material Facts Demonstrate that Plaintiff was Contributorily Negligent by Voluntarily Ingesting Medication that was not Prescribed to Him.**

In the District of Columbia, there is a complete bar to Plaintiff's recovery if CoreCivic prevails on the question of contributory negligence.[4] *Krombein v. Gali Service Industries, Inc.*, 317 F. Supp. 2d 14, 18 (D.D.C. 2004). That is, if a plaintiff by his own negligence "proximately

---

[4] CoreCivic also moves for summary judgment based on an "assumption of the risk" defense. *See* Def.'s Mot. at 18–19. As with contributory negligence, assumption of the risk bars Plaintiff's recovery. *Krombein*, 317 F. Supp. 2d at 20. Although these doctrines "overlap," they are distinct. *Id.* Assumption of risk focuses on the plaintiff's subjective knowledge of the existence of the risk and his voluntary assumption of it. *See Scoggins v. Jude*, 419 A.2d 999, 1004 (D.C. 1980). Contributory negligence focuses on the "objective reasonableness of the plaintiff's conduct." *Sinai v. Polinger*, 498 A.2d 520, 524 (D.C. 1985). The two defenses sometimes merge, because a plaintiff who knowingly and voluntarily exposes himself to a danger may also be found to have departed from an objective standard of reasonable care by encountering the risk. Because the Court concludes that the undisputed evidence demonstrates that Plaintiff departed from the standard of an objectively reasonable person, the Court does not address CoreCivic's assumption of the risk defense.

contributed to the injury," he cannot recover. *Phillips v. Fujitec Am., Inc.*, 3 A.3d 324, 328 (D.C. 2010). Contributory negligence is the failure "to act with the prudence of an ordinary reasonable person under the circumstances." *Queen v. Wash. Metro. Area Transit Auth.*, 842 F.2d 476, 479 (D.C. Cir.1988) (citing *Stager v. Schneider*, 494 A.2d 1307, 1311 (D.C. 1985)). CoreCivic "shoulders its burden by articulating specific facts with undisputed evidence demonstrating that the plaintiff 'departed from the standard of care that is to be expected of a reasonable person.'" *Krombein*, 317 F. Supp. 2d at 19. Whether a plaintiff is contributorily negligent is usually a question for the jury. *Paraskevaides v. Four Seasons Wash.*, 292 F.3d 886, 893 (D.C. Cir. 2002). The D.C. Circuit has recognized, however, that in certain "exceptional cases," "questions of negligence [and] contributory negligence . . . pass from the realm of fact to one of law." *Id.* Based on the undisputed facts before the Court, this is one such exceptional case.

CoreCivic has articulated specific facts with undisputed evidence that Plaintiff voluntarily ingested a controlled substance that was not prescribed to him, without knowing what it was, and without consulting a physician. Plaintiff does not dispute that this medication caused the "painful erection" he experienced which ultimately developed into priapism. In doing so, Plaintiff failed to act as a reasonable person would have acted for his own safety by ingesting an unknown, prescription medication without consulting a doctor. *See Nixon v. Kysela Pere et Fils, Ltd.*, 5:21-cv-00011, 2022 WL 819562, at *14 (W.D. Va. Mar. 17, 2022). ("[P]laintiff's failure to act prudently as it regards her own safety in taking a controlled substance without a physician's advice acts as a complete bar to recovery for her negligence claim and the court will grant [defendant's] motion for summary judgment accordingly." ). Plaintiff's negligence in doing so bars his recovery.

Furthermore, although Plaintiff claims that CoreCivic failed to communicate to Unity the extent of his medical condition, *see* Pl.'s Opp'n at 13, the undisputed evidence on the record

establishes that *Plaintiff* failed to communicate to the correctional officer truthful and complete information about the nature of his pain.  He failed to inform the officer that he ingested medication that was not prescribed to him, and he (repeatedly) inaccurately relayed that he was experiencing pain in his "abdomen" rather than his penis.  By omitting this critical information from his complaints, Plaintiff failed to act a reasonable person would in requesting medical care to allow CoreCivic to relay the extent and nature of the issue to Unity, which would then determine the appropriate course and urgency of medical care.  In sum, CoreCivic has proffered undisputed evidence that Plaintiff failed to act a reasonable person would under the circumstances.  As such, summary judgment in its favor is appropriate.

### B. Plaintiff Has Not Offered Evidence Sufficient to Demonstrate that CoreCivic Breached Any Duty of Care.

CoreCivic has also demonstrated that it is entitled to summary judgment based on Plaintiff's failure to offer evidence to demonstrate that it deviated from the applicable standard of care.  To demonstrate negligence in the District of Columbia, a plaintiff must establish (1) the applicable standard of care; (2) a deviation from that standard; (3) a causal connection between such deviation and the injury.  *Robinson v. Wash. Metro. Area Transit Auth.*, 774 F.3d 33, 38 (D.C. Cir. 2014) (quoting *Varner v. District of Columbia,* 891 A.2d 260, 265 (D.C. 2006)).  Although issues of negligence frequently "present factual questions for the trier of fact," in some cases the "evidence is so clear and undisputed that fair-minded men can draw only one conclusion." *Grana v. Runyon*, No. CV 18-2293 (ABJ), 2020 WL 1508588, at *3 (D.D.C. Mar. 30, 2020) (internal citation omitted).  Moreover, "summary judgment is appropriate if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In such a situation, there can be 'no genuine issue as to any material fact,' since

a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. However, a plaintiff "can defeat a defendant's motion for summary judgment if a reasonable inference can be drawn from the evidence, properly proffered, that the alleged injury would not have occurred but for the defendant's negligence." *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008) (citing *Thompson v. Shoe World, Inc.*, 569 A.2d 187, 190–91 (D.C. 1990)).

There is no dispute that CoreCivic owed Plaintiff a duty to provide Plaintiff "access" to medical care. Def.'s Mot. at 11. Applied here, this duty obligated CoreCivic to "promptly call the clinic, inform clinic staff of [Plaintiff's] complaint, and let the clinic staff inform [CoreCivic] staff whether [Plaintiff] should be brought to the clinic immediately." *See id.* at 12; Def.'s Ex. I, Report of Correctional Expert Aden Bushee ("Bushee Report") at 1, ECF No. 89-10. In addition, there is no dispute that CoreCivic was "required to wait for direction from Unity to learn whether the inmate would be brought to medical immediately" or not and that CoreCivic had "no control" over whether and when an inmate would be seen by a Unity provider and/or transported to the medical unit. Def.'s Mot. at 12; *see also* Bushee Report at 1 ("It is not up to a correctional employee to determine whether an inmate who indicates that he needs to see a doctor actually needs immediate medical attention.").

CoreCivic argues that the undisputed evidence demonstrates that it fulfilled this duty, citing Plaintiff's deposition testimony in which he stated that he observed the correctional officer make a phone call, and that the officer told him that he had been "trying all morning" to get information about medical transport. Def.'s Mot. at 13. In response, Plaintiff argues that CoreCivic has "no admissible evidence" to demonstrate that the correctional officer did in fact make a phone call to Unity. Pl.'s Opp'n at 10. Specifically, Plaintiff contends that CoreCivic cannot rely on Plaintiff's

testimony about what the correctional officer told him to prove that the officer actually called Unity. *Id.* at 10–11. This argument is flawed for two reasons. First, it is the *plaintiff's* burden at trial to prove the elements of his negligence claim; it is not the defendant's burden to disprove negligence. *See* Def.'s Reply at 3. At summary judgment, Plaintiff as the non-moving party—*not* CoreCivic— must proffer evidence sufficient to establish the elements of his claims "on which [he] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Second, to the extent Plaintiff contends that his own deposition testimony is "inadmissible hearsay," such an argument is misplaced because CoreCivic would offer *Plaintiff's* deposition testimony as an opposing party statement. *See* Def.'s Reply at 6; Fed. R. Evid. 801(d)(2)(A) (statements "offered against an opposing party" and "made by the party" are not hearsay).

Plaintiff next contends that it is "more likely . . . that the guard never called anyone." Pl.'s Opp'n at 12. But Plaintiff himself testified that he saw the correctional officer make a phone call after he complained of pain. Plaintiff next speculates that, even if the correctional officer contacted Unity, it is "very unlikely" that the guard "accurately conveyed the complaints Mr. Harrison presented to him." *Id.* at 12–13. Plaintiff has not produced or cited *any* evidence in support of this allegation. Instead, he contends that he conveyed to the correctional officer that he was experiencing a medical "emergency" and was in severe pain; from this, he speculates that the correctional officer must not have conveyed such information to Unity because it took several hours for him to be transported to the medical unit.[5] *See* Pl.'s Opp'n at 6 ¶¶ 34–38, 40; *id.* at 11. But, again, he offers no evidence to support this point—and he does not dispute that Unity *not* CoreCivic was responsible for determining when an inmate would be transported to the medical

---

[5] CoreCivic correctly notes that, even after he was transported to the medical unit sometime between 8:00 a.m. and 10:00 a.m., he was first seen by a provider after 2:00 p.m. and then by a registered nurse after 7:00 p.m., suggesting that Unity did not deem his condition to be an "emergency." *See* Def.'s Mot. at 9, 15; Def.'s Reply at 7.

unit.  Although "[a] jury is entitled to draw a vast range of reasonable inferences from evidence," it "may not base a verdict on mere speculation[.]"  *Martin v. Omni Hotels Mgmt. Corp.*, 206 F. Supp. 3d 115, 123–24 (D.D.C. 2014) (quoting *United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990)).  "The possibility that a jury might speculate in the plaintiff's favor . . . is simply insufficient to defeat summary judgment."  *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 631 (D.C. Cir. 2010) (quoting *Montgomery v. Chao*, 546 F.3d 703, 708 (D.C. Cir. 2008)).  Plaintiff's speculation—in the absence of any evidence—that the correctional officer either failed to call Unity or did not accurately relay Plaintiff's complaint of pain (which Plaintiff himself did not accurately relay to the officer) is insufficient to demonstrate an essential element of his negligence claim—namely, that CoreCivic breached its duty of care to Plaintiff.  Plaintiff's failure to offer evidence in support of any "breach" requires summary judgment in Defendants' favor.  As such, the Court does not address the remaining arguments raised by Defendants, including those related to proximate causation.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** CoreCivic's [89] Motion for Summary Judgment.  This case shall be dismissed with prejudice.  An appropriate Order accompanies this Memorandum Opinion.

___/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

**Date**: September 14, 2022